## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

GREGORY T. BUNCH

      **Plaintiff,**

      v.

CHEVRON U.S.A. INC.

      **Defendant.**

**CIVIL NO. 2:23-CV-1587**

## COMPLAINT

Plaintiff Gregory T. Bunch asserts his causes of action against defendant Chevron U.S.A. Inc. as follows:

### THE PARTIES

1.    Plaintiff is Gregory "Greg" T. Bunch. Mr. Bunch is 38 years old. He is a Mississippi citizen. He resides in Woodville, Wilkinson County, Mississippi with his wife and children. Mr. Bunch's family depends on Mr. Bunch's income and wages to support themselves.

2.    Defendant is Chevron U.S.A. Inc. (hereinafter "**Chevron**"). Chevron is a foreign corporation organized in Pennsylvania and headquartered in California. Chevron is registered with the Louisiana Secretary of State and its agent for service of process is The Prentice-Hall Corporation System, Inc. Chevron actively does business in Louisiana, Louisiana coastal waters, and the Gulf of Mexico. Chevron's headquarters for its "Gulf of Mexico Business Unit" operations is located in Covington, Louisiana.

1

**JURISDICTION AND VENUE**

3.      The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question); 42 U.S.C. § 2000e-2 (Title VII discrimination based on religion); and 42 U.S.C. § 2000e-3 (Title VII retaliation) as more particularly set-out herein.

4.      The Court has supplemental, subject-matter jurisdiction over Mr. Bunch's state law claims pursuant to 28 U.S.C. § 1367(a) because the state-law claims are so related to his federal law claims that they form part of the same case or controversy as more particularly set-out herein.

5.      The Court has personal jurisdiction over Chevron because it is a foreign corporation registered and actively doing business in Louisiana and, through its registered agent for the service of process, is present within Louisiana at the time this suit commenced.

6.      Alternatively, the Court has personal jurisdiction over Chevron because it regularly transacts business in Louisiana and regularly employs Louisiana citizens, committed the unlawful employment acts within Louisiana giving rise to the causes of action in this case, and derives substantial revenue from the services it provides in Louisiana.   Thus, Chevron has established minimum specific contacts with Louisiana, arising from the specific facts of this case, comporting with the requirements of fair play, substantial justice, and the Fourteenth Amendment of the Constitution of the United States.

7.      Venue for Mr. Bunch's Title VII claims is proper in this Court pursuant to 42

U.S.C. § 2000e–5(f)(3) because (1) the unlawful employment practice alleged herein was committed within this judicial forum (specifically, St. Tammany and Terrebonne parishes), (2) upon information and belief the employment records relevant to this action are found in this judicial district (specifically, St. Tammany parish), and (3) but for the unlawful employment practice, Mr. Bunch would have been employed in this district (specifically, St. Tammany parish).

8. Venue for Mr. Bunch's supplemental state-law claims is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the unlawful conduct alleged in the case occurred in this judicial forum (St. Tammany parish) and Mr. Bunch suffered his injuries and damages in this judicial forum (St. Tammany parish). Venue is also proper under 28 U.S.C. § 1391(d) because Louisiana is a state with multiple judicial districts and Chevron U.S.A. Inc. is deemed to reside in this judicial district because of its contacts in the Eastern District of Louisiana.

## PROCEDURAL AND STATUTORY ALLEGATIONS

9. This case arises under Title VII of the Civil Rights Act as amended.

10. Chevron employed more than 500 employees every week of 2020, 2021, and 2022.

11. Accordingly, Chevron is a covered employer under Title VII.

12. Chevron both paid Mr. Bunch his wages and received labor from him in return.

13. Accordingly, Chevron is a covered employer under the Louisiana Employment Discrimination Law (the "LEDL").

14. Chevron hired Mr. Bunch as its employee in February 2014.

15.   In August 2021, Chevron enacted a policy that required all offshore workers assigned to Chevron's "Gulf of Mexico Business Unit" to receive any of the then-available vaccinations against the SARS-CoV-2 virus.

16.   On October 10, 2021, Mr. Bunch timely requested a reasonable accommodation to Chevron's COVID-19 vaccination mandate based on his sincerely held religious objection.   Mr. Bunch requested any reasonable accommodation that would have permitted him to continue working in his current offshore position.

17.   On November 11, 2021, Chevron denied Mr. Bunch's request.   In lieu of accommodating his religious objection, Chevron constructively suspended Mr. Bunch by placing him on indefinite, unpaid, and involuntary leave.   Chevron indicated it would assist him in searching for another position within the company, but Chevron did not meaningfully do so.

18.   Chevron constructively suspended Mr. Bunch from work by placing him on indefinite, unpaid, involuntary leave on December 1, 2021.

19.   Mr. Bunch thereafter applied for multiple other jobs with Chevron for which he was objectively qualified but was not selected for any of them.

20.   Chevron eventually ended its vaccination mandate and finally returned Mr. Bunch to work, offshore, on February 22, 2023.

21.   On May 9, 2022, within 300 days of his denial of reasonable accommodation, constructive suspension, and non-selection for other job openings, Mr. Bunch timely filed an EEOC Charge of Discrimination with the EEOC New Orleans Field Office alleging Chevron unlawfully discriminated against him based on his religion, failed

to reasonably accommodate his religious objection, and retaliated against him for requesting reasonable accommodations in the first place in violation of Title VII and in retaliation for (EEOC Charge No. 461-2022-01563).

22.     EEOC gave Chevron notice of Mr. Bunch's Charge of Discrimination at some point before December 5, 2022.

23.     On May 8, 2023, the EEOC issued Mr. Bunch a Notice of Right to Sue in this matter.

24.     Mr. Bunch timely filed this federal lawsuit within 90 days of receiving the EEOC's Notice of Right to Sue letter.

## FACTS

### A.     Mr. Bunch and Chevron

25.     At the time of his constructive suspension, Chevron employed Mr. Bunch as the Lead Automation Technician onboard Chevron's Petronius fixed oil platform located in the Gulf of Mexico, block VK 786, approximately 210 kilometers southeast of New Orleans.   Chevron organizationally assigns Petronius and its workers to Chevron's "Gulf of Mexico Business Unit" (the "**GOMBU**").   Chevron's headquarters for its GOMBU is located in Covington, Louisiana.   At all times relevant to this case, including throughout his constructive suspension and unpaid leave, Chevron organizationally assigned Mr. Bunch to its GOMBU headquarters in Covington.

26.     Mr. Bunch was objectively good at his job.   He does not recall receiving any written discipline.

27.     At all times during his employment, Mr. Bunch successfully performed the

essential job responsibilities of his Lead Automation Tech position. Mr. Bunch has never objected to any of his essential or non-essential job responsibilities because of his sincerely held religious beliefs. The only Chevron policy Mr. Bunch has ever objected to because of his sincerely held religious beliefs was Chevron's COVID-19 vaccination mandate (discussed in greater detail below).

28. Mr. Bunch usually worked 14/14 hitches aboard Petronius. Specifically, he usually worked approximately 14 days aboard Petronius and then rotated back ashore, off from work, for the next 14 days.

29. Mr. Bunch had already contracted COVID-19 in March or April 2021 and fully recovered from it prior to Chevron constructively suspending his employment in December 2021.

30. Based on his personal knowledge, including that Mr. Bunch never contracted a symptomatic case of COVID-19 again after his first recovery, Mr. Bunch alleges he possessed antibodies to the SARS-CoV-2 virus at the time Chevron constructively suspended his employment. However, Chevron indicated that employees who had fully recovered from COVID-19 were still required to comply with Chevron's vaccination mandate, and Chevron never asked Mr. Bunch to submit medical proof of his immunity.

**B.    Chevron's Response to COVID-19 Prior to Vaccinations**

31. The respiratory disease known as COVID-19 is caused by the Severe Acute Respiratory Syndrome Coronavirus 2 ("SARS-CoV-2") and its many variants.

32. By the week of August 12, 2020, the CDC reported a total of slightly more than

5 million confirmed cases of COVID-19 nationwide.

33.    During this time, before any COVID-19 vaccine became available, Chevron continued to do business, continued to operate Petronius, and continued to require Mr. Bunch and his colleagues to perform their responsibilities aboard the platform.

34.    Chevron implemented several work-related precautions that they apparently determined were safe enough to allow Mr. Bunch and his colleagues to continue performing their job responsibilities and interacting with others without unreasonable risk of infection.

35.    Among those precautions were social distancing from one another, symptom checks, the use of face coverings, and periodic COVID-19 testing.

36.    Using these precautions, Chevron apparently determined Mr. Bunch and his colleagues did not present a direct threat of infection to each other aboard Petronius.

37.    Mr. Bunch did come to work aboard Petronius, did continue to do his job, and Chevron did continue to make significant profits during the pandemic because of the labor of Mr. Bunch and his colleagues.

**C.    Chevron's Response to COVID-19 after Vaccinations**

38.    By way of background, the CDC reports that as of June 1, 2021 the COVID-19 "B.1.617.2 / 'Delta' variant" had become the "dominant variant in the U.S."[1]

39.    The CDC reports that as of July 30, 2021, "The early data showing high viral loads in people infected with the Delta variant of COVID-19 suggest a concern that,

---

[1] The CDC publishes a "COVID-19 Timeline" on its website which includes these facts. The site may be accessed here: https://www.cdc.gov/museum/timeline/covid19.html

7

unlike with other variants, vaccinated people infected with Delta can transmit the virus to others."[2]

40.    Around August 23, 2021, the FDA granted full approval to the first publicly available COVID-19 vaccination in the United States manufactured by Pfizer.

41.    On October 29, 2021, *The Lancet* medical journal reported that "fully vaccinated individuals with breakthrough infections have peak viral load similar to unvaccinated cases and can efficiently transmit infection in household settings, including to fully vaccinated contacts."[3]

42.    On January 19, 2022, shortly after Mr. Bunch's constructive suspension, the CDC reported in its Morbidity and Mortality Weekly Report ("MMWR") that people who had developed immunity to COVID-19 from prior infection posed no more risk – and perhaps less of a risk – of reinfection by the predominate Delta variant than people who had developed immunity from vaccination:

> These results suggest that vaccination protects against COVID-19 and related hospitalization **and that surviving a previous infection protects against a reinfection**. Importantly, **infection-derived protection was greater** after the highly transmissible Delta variant became predominant**, coinciding with early declining of vaccine-induced immunity in many persons.** (emphasis added)[4]

43.    CDC's findings were widely reported in news media.[5]

---

[2]  *Id.* at https://www.cdc.gov/museum/timeline/covid19.html

[3]  Anika Singanayagam, et al., *Community transmission and viral load kinetics of the SARS-CoV-2 delta (B.1.617.2) variant in vaccinated and unvaccinated individuals in the UK: a prospective, longitudinal, cohort study*, THE LANCET (Oct. 29, 2021).  A copy of the article may be accessed here: https://www.thelancet.com/journals/laninf/article/PIIS1473-3099(21)00648-4/fulltext

[4]  A copy of this report may be accessed at https://www.cdc.gov/mmwr/volumes/71/wr/mm7104e1.htm.

[5]  *See, e.g., Prior COVID infection more protective than vaccination during Delta surge – U.S.*

44.    Just four months earlier, in August 2021, Chevron enacted a new employment policy that, on its face, required all employees assigned to any Gulf of Mexico Business Unit facility – like Petronius – to receive any of the FDA-approved COVID-19 vaccinations unless the employee applied for and was granted by management an accommodation based on religious objection or disability.

45.    However, Mr. Bunch alleges that Chevron's religious accommodation policy was a sham. Specifically, to the best of his knowledge, Chevron did not permit any religious objector to continue working on Petronius. Mr. Bunch alleges the policy was designed simply to give Chevron pretextual cover against future legal liability for refusing to engage in any interactive or reasonable accommodation process for employees who held religious objection to Chevron's vaccination mandate.

46.    Ultimately, under Chevron's policy, any unvaccinated worker who had not been granted an "accommodation" (which did not appear to actually exist), and who had not received any of the available COVID-19 vaccinations by December 1, 2021, was constructively suspended by being placed on indefinite, unpaid, involuntary leave from work. Under Chevron's policy, unvaccinated workers had 30 days after constructive suspension to apply for, win, and begin working in some other job within the company but outside of the GOMBU or were at risk for immediate termination.

47.    Mr. Bunch alleges that at no time did Chevron offer any reason (rational or otherwise) for why it permitted Mr. Bunch and his unvaccinated colleagues to work

_study_, REUTERS (Jan. 19, 2022), a copy of which may be accessed here: https://www.reuters.com/business/healthcare-pharmaceuticals/prior-covid-infection-more-protective-than-vaccination-during-delta-surge-us-2022-01-19/

on Petronius throughout the entire pandemic, under conditions that Chevron itself apparently deemed reasonably safe and not a direct threat to worker health or safety, but then refused to allow religious objectors to continue working on Petronius after the CDC approved the first COVID-19 vaccine in August 2021.

48.     Likewise, even after Chevron enacted its vaccination policy, it still permitted its non-vaccinated workers to continue working aboard Petronius until December 1, 2021.  To the extent Chevron determined that somehow non-vaccinated religious objectors like Mr. Bunch all-of-a-sudden posed a direct threat to themselves or others after August 2021, Chevron provided no reason (rational or otherwise) for why it permitted employees like Mr. Bunch to continue working on Petronius for several months before constructively suspending them.

49.     Moreover, despite prevailing public health evidence that both vaccinated and non-vaccinated people were capable of contracting and spreading the COVID-19 Delta variant, and that non-vaccinated people who had contracted and recovered from COVID-19 appeared to have immunity as durable and effective as their vaccinated peers, Chevron never offered any reason (rational or otherwise) why the infection, recovery, and immunity history of workers like Mr. Bunch was not considered as part of the reasonable accommodation analysis to continue working aboard Petronius.

50.     Based on all these facts and circumstances as Mr. Bunch appreciates them, he alleges that Chevron did not actually believe that non-vaccinated workers aboard Petronius posed any unreasonable safety risk or direct threat to employee health or safety after August 2021.

51. Instead, Mr. Bunch alleges that Chevron's statements to the contrary were pretext for what was, in reality, a business decision meant to curry political, social, or business favor in the governmental, business, and public relations communities and at the expense of religious objectors like Mr. Bunch.

52. Likewise, based on all these facts and circumstances as he appreciates them, Mr. Bunch alleges that Chevron never intended to permit any non-vaccinated religious objector to continue working aboard Petronius because Chevron's decision-makers held animus against them based on their religious beliefs, and not because of any insincere belief that religious objectors posed a direct threat to employee safety.

**D.    Chevron Suspends Mr. Bunch and Offers No Accommodation**

53. Mr. Bunch identifies as a Christian and adheres to what he describes as a Christian religious worldview.

54. Relevant to this case, Mr. Bunch holds a sincere religious belief that, at the time he was employed by Chevron, prevented him from receiving any of the then-currently available COVID vaccines, and, therefore, conflicted with Chevron's vaccination policy.

55. Specifically, Mr. Bunch believes that good and evil exist, and he is spiritually obligated to do good and spiritually prohibited from doing evil. Mr. Bunch believes that all iterations of the then-available COVID-19 vaccines were spiritually evil because Mr. Bunch determined each was derived, researched, or laboratory-tested using fetal cell lines, harvested from human biological tissue without consent. Mr. Bunch's religious belief is that receiving any of these vaccines is akin to participating

11

in what he regarded in context as the sin of abortion, and, accordingly, Mr. Bunch's religious belief prohibited him from receiving any of the then-available COVID-19 vaccines.

56.    In October 2021, Mr. Bunch timely notified Chevron of his religious objection to its COVID-19 vaccination mandate.

57.    Mr. Bunch forthrightly described the basis of his religious objection noted above.

58.    On October 26, 2021, Chevron's human resources officer, Robert Ray, interviewed Mr. Bunch.   Based on the questions Mr. Ray asked him, Mr. Bunch alleges the real purpose of the interview was to gin up reasons to pretextually undermine the sincerity of Mr. Bunch's religious beliefs and deny his request for accommodation.

59.    For instance, to the best of Mr. Bunch's memory, Mr. Ray asked Mr. Bunch when the last time he received any vaccination, and whether he was aware that other medicines (not just vaccines) were purportedly researched or derived from fetal stem cell lines.  Mr. Bunch honestly answered that he had never knowingly taken any such medicine.

60.    Mr. Bunch also expressed skepticism to Mr. Ray for why his accommodation to continue working on Petronius would not be granted given that Chevron had already extended the time to receive vaccination, or how Mr. Bunch could be a threat to other workers who were vaccinated.

61.    Finally, during their call, Mr. Bunch again communicated that he had already

contracted and fully recovered from COVID-19 in by April 2021, and that Mr. Bunch lived in a small town and did not interact with many people outside of work.

62. On November 11, 2021, Chevron communicated that they accepted the sincerity of Mr. Bunch's religious objection to the company's COVID-19 vaccination mandate but denied him any accommodation that permitted him to continue working in his job aboard Petronius.

63. Instead, on November 11, Chevron indicated that Mr. Bunch would be placed on indefinite, unpaid, involuntary leave beginning on December 1, 2021. Chevron indicated that Mr. Bunch had no more than 30 days to find some other job within Chevron or could face immediate termination. Chevron indicated that it would "assist you to search for another position" within the company.

64. To the best of Mr. Bunch's memory, the next day Mr. Ray emailed him again indicating four or so potential Chevron openings that Mr. Bunch could apply for. Mr. Bunch did apply for those jobs but was not selected.

65. To the best of Mr. Bunch's memory, Mr. Ray never assisted him in identifying or applying for any other open positions again. To the best of his memory, no Chevron employee ever "assisted" Mr. Bunch to identify, apply for, or win another job as part of Chevron's purported "accommodation." In reality, there was no accommodation. The process was a sham meant to give a pretextual façade against future legal liability for religious-based discrimination.

66. The reality is that Chevron identified Mr. Bunch as a religious objector and then indefinitely suspended him without pay and without providing him with any of

13

the many reasonable accommodations that exist that could have allowed him to continue working on Petronius.

67.  Such accommodations included, but were not limited to: observing all of Chevron's health protocols prior to August 2021; requiring Mr. Bunch to quarantine for an extended period of time prior to rotating back to Petronius; requiring Mr. Bunch to undergo COVID-19 testing, at his own expense, both during his onshore quarantine and again just prior to departure to Petronius; observing social distancing while aboard Petronius at all times; using approved face coverings aboard Petronius at all times; or simply regarding Mr. Bunch as compliant with Chevron's vaccination mandate because he had already contracted and fully recovered from COVID-19 by April 2021.  Mr. Bunch would have agreed to any of these accommodations.

68.  Essentially, Mr. Bunch could have ensured, for all practical purposes, that he was less of a risk of contracting or passing the SARS-Co-V-2 virus versus his vaccinated peers.

69.  These reasonable accommodations posed Chevron zero burden, hardship, health risk, financial cost, or future risk.  Chevron's refusal to permit these zero-burden accommodations is inexplicable.  The only reasonable conclusion is that Chevron suspended Mr. Bunch based on his religious belief or in retaliation against Mr. Bunch for engaging in the protected activity of requesting a reasonable accommodation in the first place.

**E.  Chevron Eventually Returns Mr. Bunch to Work**

70.  Without any further "assistance" from Chevron's purported accommodation,

Mr. Bunch continued to apply for jobs within Chevron to return to work. He was interviewed for two positions but not selected for either.

71.  Mr. Bunch alleges he was objectively qualified for each of these two positions he was interviewed for.

72.  Mr. Bunch alleges he was not selected for the jobs based on (1) the same religious-based animus alleged throughout this complaint; and additionally or in the alternative, (2) in retaliation against Mr. Bunch for engaging in protected activities and requesting accommodation in the first place.

73.  On September 18, 2022, President Biden announced while on the *60 Minutes* television program that "The pandemic is over."

74.  Nevertheless, Chevron waited another three months, until January 16, 2023, before ending its COVID-19 vaccination requirement for employees working in its Gulf of Mexico Business Unit, including aboard Petronius.

75.  On January 30, 2023, Chevron human resources officer Robert Ray contacted Mr. Bunch and offered to return him to his prior job aboard Petronius.

76.  On February 22, 2023, Mr. Bunch returned to work aboard Petronius.

77.  In total, Mr. Bunch was out of work and receiving no wages for approximately 14 months despite having previously contracted and recovered from COVID-19 and despite numerous zero-cost and zero-burden accommodations that would have permitted him to continue working aboard Petronius, just as Chevron had required him to do prior to December 1, 2021.

15

**F. Chevron Intentionally Discriminated and Retaliated Against Mr. Bunch**

78. Based on the facts and circumstances as he understands them, Mr. Bunch alleges that Chevron, through its decision-makers, intentionally, maliciously, and with reckless disregard to his federally protected rights discriminated against him based on his religion, refused to accommodate his religious objection despite numerous, reasonable accommodations, and retaliated against him because of his protected activities.

79. At all times, Chevron's decision-makers constructively suspended Mr. Bunch; refused to reasonably accommodate his religious objection; and retaliated against him in the full course and scope of their employment, and Chevron is liable of the actions of its officers, employees, and agents.

**G. Damages**

80. Mr. Bunch suffered loss of his income and benefits because of Chevron's religious discrimination, failure to accommodate, retaliation, and wrongful suspension.

81. Mr. Bunch suffered mental anguish and emotional distress because of Chevron's religious discrimination, failure to accommodate, retaliation, and wrongful suspension.

82. Mr. Bunch has suffered other compensatory and out-of-pocket damages because of Chevron's religious discrimination, failure to accommodate, retaliation, and wrongful suspension.

16

## CAUSES OF ACTION

**A.    Failure to Reasonably Accommodate Religious Objection and Wrongful Suspension against Chevron under Title VII**

83.    Mr. Bunch states a cause of action for failure to reasonably accommodate his religious objection and wrongful, constructive suspension against Chevron under Title VII.

84.    Pursuant to Title VII of the Civil Rights Act (as amended), an employer may not discriminate against any "individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's . . . religion[.]"  42 U.S.C. § 2000e-2(a)(1). "Religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).

85.    Title VII makes it "an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977).  Although a plaintiff is not required to prove a prima facie case at this stage of the proceeding, a plaintiff eventually proves a prima facie case for failure-to-accommodate discrimination by showing "(1) that he had a bona fide religious belief that conflicted with an employment requirement; (2) that he informed the employer of his belief; and (3) that he was discharged for failing to comply with the conflicting employment requirement." *Antoine v. First Student, Inc.*,

17

713 F.3d 824, 831 (5th Cir. 2013). Once the plaintiff proves a prima facie case, "the burden shifts to the defendant to demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee's needs without undue hardship." *Id.* Current decisional law holds a proposed accommodation is unreasonable "when an employer is required to bear more than a de minimis cost." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 487 (5th Cir. 2014); *accord Hardison,* 432 U.S. at 84.

86.    An employer who discriminates against an employee in violation of Title VII is liable for the employee's lost back wages, lost future wages or reinstatement, compensatory damages, punitive damages, and reasonable attorney's fees and costs incurred in the matter.

87.    Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

88.    At the outset, Mr. Bunch has proven his prima facie case for failure-to-accommodate discrimination. He held a sincere, religious belief that conflicted with Chevron's COVID-19 vaccination policy (described throughout this lawsuit). Mr. Bunch timely requested a reasonable accommodation based on his religious objection. Chevron admittedly accepted the sincerity of Mr. Bunch's religious objection. Chevron then constructively suspended Mr. Bunch by placing him on indefinite, unpaid, involuntary leave from work from approximately December 1, 2021 until Chevron returned him to duty on February 22, 2023.

89.    Chevron, in turn, failed to offer Mr. Bunch any reasonable accommodation for

18

his religious beliefs that would have permitted him to continue working. Chevron instead gave Mr. Bunch 30 days to find replacement work within Chevron or risked immediate termination. Although Chevron purportedly offered to assist Mr. Bunch to find replacement work within Chevron's business, Chevron never offered any meaningful assistance beyond the four or so job openings Robert Ray forwarded to Mr. Bunch on November 12, 2021, the day after informing him that he was to be indefinitely suspended. In reality, Mr. Bunch alleges the entire "accommodation" was a sham. Chevron now must bear the burden of persuasion that no reasonable accommodation existed, which Mr. Bunch disputes.

90. For purposes here, Mr. Bunch alleges multiple reasonable accommodations were available to him, any of which could have allowed him to continue working on Petronius with pay and which would have caused zero or only a de minimus burden to Chevron.

91. Specifically, as described throughout this complaint, Chevron could have permitted Mr. Bunch to continue working while observing the same safety precautions Chevron had previously permitted non-vaccinated workers to adhere to, both before and after vaccinations became publicly available in the United States. Likewise, Chevron could have simply transferred Mr. Bunch to any open position outside of the GOMBU. Moreover, the nature of Mr. Bunch's work responsibilities and rotational shifts allowed him to quarantine for many days prior to returning to work. Combined with COVID-19 testing at his own expense during his quarantine period and continuous use of face coverings and other precautions while at work – all

19

of which Mr. Bunch was willing to undertake – there was no practical or reasonable risk that Mr. Bunch could have contracted or transmitted COVID-19 in the workplace. Mr. Bunch was essentially willing to make himself the safest employee aboard Petronius or at any other Chevron offshore facility, even compared to his vaccinated colleagues, and these precautions imposed zero burden, cost, or risk to Chevron and its employees. The fact Chevron did not accept these accommodations, combined with Chevron's apparent attempt to undermine the sincerely of Mr. Bunch's religious beliefs during his accommodation interview, strongly evinces religious animus and unlawful religious discrimination.

92. Mr. Bunch alleges other reasonable accommodations likely existed as well, but Chevron refused to engage in any meaningful, interactive process with him to determine what those might have been. Had Chevron been willing to engage in an interactive process, Mr. Bunch alleges he and management could have devised a reasonable accommodation.

93. Accordingly, Chevron owes Mr. Bunch all damages arising from its failure to reasonably accommodate his religious beliefs and practices, including Mr. Bunch's lost back wages, lost future wages or reinstatement, compensatory damages, punitive damages, and reasonable attorney's fees and costs incurred in the matter.

94. Finally, in the alternative, if the Court were to find that a proposed accommodation that would have permitted Mr. Bunch to continue working was nevertheless "unreasonable" because it imposed something more than "de minimis" burden on Chevron, Mr. Bunch alleges the proper standard to evaluate a reasonable

20

accommodation claim in a Title VII religious objection case is akin to the standard currently applicable in disability claims under the ADAAA – that is to say, an individualized assessment of current circumstances that show that a specific reasonable accommodation would cause the employer significant difficulty or expense. *See* 29 C.F.R. § 1630.2. Plaintiff alleges the "de minimus" standard currently applicable to Title VII religious objection cases is inconsistent with the statutory text of 42 U.S.C. § 2000e(j) and its meaning and should be overturned. *See Groff v. DeJoy,* 214 L.Ed.2d 382; 143 S.Ct. 646 (2023) (granting petition for writ of certiorari in religious accommodation case on questions of whether "the Court should disapprove the more-than-de-minimus-cost test" in religious accommodation cases under Title VII, and whether an employer may demonstrate "undue hardship" by showing a burden to co-workers rather than the business itself).

95.    Plaintiff likewise alternatively alleges that Chevron was obligated to extend to Mr. Bunch any reasonable accommodation from its COVID-19 vaccination policy on account of his religious objection that it afforded to any other employee for any other reason. *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.,* 575 U.S. 768, 775 (2015) ("But Title VII does not demand mere neutrality with regard to religious practices – that they be treated no worse than other practices. Rather, it gives them favored treatment . . . Title VII requires otherwise-neutral policies to give way to the need for an accommodation").

**B.    Unlawful Disparate-Treatment Discrimination and Constructive Suspension Based on Religion against Chevron under Title VII**

96.    Mr. Bunch states a cause of action for unlawful disparate-treatment

21

discrimination based on religion and constructive suspension against Chevron under Title VII. [6]

97. Under Title VII, an employer illegally discriminates against and terminates an employee when the decision is "because of" the worker's religion. 42 U.S.C. §2000e-2(a)(1).

98. An employer also illegally terminates an employee when the decision is "was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m); *accord Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005) (so holding). In a Title VII disparate-treatment action, an employer is vicariously liable for its decision-maker's discriminatory acts when the decision-maker serves as the employer's agent, or when the employer knew or should have known of the decision-maker's discriminatory conduct and took no remedial action. *See e.g., Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1235 (5th Cir. 1989).

99. Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

100. As alleged throughout this complaint, Chevron's decision to constructively suspend Mr. Bunch's employment, despite the ready availability of reasonable accommodations, and against the weight of public health knowledge at the time,

---

[6] The Supreme Court has held a Title VII discrimination claim based on religious animus and a Title VII claim based on failure-to-accommodate are both claims for disparate-treatment discrimination under 42 U.S.C. § 2000e-2. *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 (2015). Here, plaintiff presents the facts and law of his disparate treatment claims based on religious animus and failure-to-accommodate separately merely for the sake of clarity.

particularly given that Mr. Bunch had contracted and fully recovered from COVID-19 by April 2021, was inexplicable. Mr. Bunch alleges the actual explanation for these facts is that Chevron held bias against Mr. Bunch based on his religion and denied him an accommodation and constructively suspended him from work because of that animus.

101. Accordingly, Chevron owes Mr. Bunch all damages arising from its wrongful, constructive suspension, including Mr. Bunch's lost back wages, lost future wages or reinstatement, compensatory damages, punitive damages, and reasonable attorney's fees and costs incurred in the matter.

**C.    Unlawful Disparate-Treatment Discrimination and Non-Selection for Employment Based on Religion against Chevron under Title VII**

102. Mr. Bunch states a cause of action for unlawful disparate-treatment discrimination based on religion and non-selection for employment against Chevron under Title VII.

103. Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

104. After Chevron placed Mr. Bunch on indefinite, unpaid, and involuntary leave, Mr. Bunch applied for multiple job openings within Chevron's business. Chevron interviewed Mr. Bunch for two of those positions but did not select him. Mr. Bunch alleges he was objectively qualified for each of these two jobs.

105. Mr. Bunch alleges that Chevron did not select him for either of these two positions based on the same religious animus described throughout this lawsuit.

106. Accordingly, Chevron owes Mr. Bunch all damages arising from its wrongful

23

non-selections, including Mr. Bunch's lost back wages, lost future wages or reinstatement, compensatory damages, punitive damages, and reasonable attorney's fees and costs incurred in the matter.

**D.    Unlawful Disparate-Treatment Retaliation and Non-Selection for Employment Because of Protected Activities against Chevron under Title VII**

107.   Mr. Bunch states a cause of action for unlawful disparate-treatment retaliation and non-selection for employment because of protected activities against Chevron under Title VII.

108.   Under Title VII, an employer may not discriminate against an employee "because he has opposed any practice made an unlawful employment practice under [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]. 42 U.S.C. §2000e-3(a). In the analogous context of the Americans with Disabilities Act, "[i]t is undisputed that making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity." *Tabatchnik v. Cont'l Airlines*, 262 Fed. Appx. 674, 676 (5th Cir. 2008).

109.   In a retaliation case, "an adverse employment action is one that 'a reasonable employee would have found . . . [to be] materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53 (2006)). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima

facie case of retaliation." *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007) (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)).

110.    Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

111.    Mr. Bunch was a successful Lead Automation Technician on Chevron's flagship oil platform, Petronius.  He applied and was interviewed for two positions after his constructive suspension.  He was objectively qualified for both.  In addition or in the alternative to bias against Mr. Bunch based on religious animus, Mr. Bunch alleges Chevron refused to hire him for either of these two positions in retaliation against Mr. Bunch for engaging in protected activities under Title VII, including but not limited to requesting a reasonable accommodation to Chevron's COVID-19 vaccination mandate in the first place.

112.    Accordingly, Chevron owes Mr. Bunch all damages arising from its wrongful non-selections, including Mr. Bunch's lost back wages, lost future wages or reinstatement, compensatory damages, punitive damages, and reasonable attorney's fees and costs incurred in the matter.

**E.    Louisiana State Law Liability against Chevron under the LEDL**

113.    Mr. Bunch states a cause of action for unlawful failure-to-accommodate religious objection, disparate-treatment discrimination, disparate-treatment retaliation, constructive suspension, and non-selection for employment based on religion and because of protected activates against Chevron under the Louisiana Employment Discrimination Law, codified at La. Rev. Stat. Ann. § 23:301 *et seq.*

114.   Under the LEDL, no employer or labor organization may discriminate against an employee based on his religion.  La. Rev. Stat. Ann. § 23:332 *et seq.*  LEDL discrimination claims are analyzed under the analogous Title VII standard.  *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).

115.   Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

116.   Accordingly, for all the reasons stated throughout this complaint, and specifically incorporating the analysis of plaintiff's claims for failure-to-accommodate liability, disparate-treatment discrimination based on religion, and disparate-treatment retaliation because of protected activities under Title VII, Chevron is liable to Mr. Bunch for all his damages arising from defendants unlawful acts, including lost back wages, lost future wages or reinstatement, compensatory damages, and reasonable attorney's fees and costs incurred in this matter.

## RESERVATION OF AMENDMENT

Mr. Bunch reserves the right to amend this lawsuit as circumstances warrant.

## JURY DEMAND

Mr. Bunch requests a trial by jury on all issues and causes of action.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Greg Bunch prays that this complaint be deemed good and sufficient; that it and summons be served upon defendant Chevron U.S.A. Inc.; and, after due proceedings are had, that judgment be entered in favor of plaintiff and against defendant:

26

1.      Under all causes of action, the entry of a declaratory judgment in favor of Mr. Bunch and against Chevron declaring that the practices complained of in this complaint are unlawful under federal and state law and Chevron willfully, maliciously, or recklessly as the case may be violated the rights of Mr. Bunch as alleged and proven.

2.      Under Title VII, awarding Mr. Bunch all damages and equitable relief due against Chevron, including but not limited to back pay, front pay or reinstatement, compensatory damages, punitive damages, and reasonable attorney's fees and costs.

3.      Under the LEDL, awarding Mr. Bunch all damages and equitable relief due against Chevron, including but not limited to back pay, front pay or reinstatement, compensatory damages, and reasonable attorney's fees and costs.

4.      Under all causes of action, awarding all other legal or equitable relief to which plaintiff is due against all defendants.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz, TA (Bar #32746)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A / Mandeville, LA 70448
Telephone:  (504) 275-5149
Facsimile:  (504) 910-1704
Email:  vogeltanz@gmail.com

*Attorney for Greg Bunch*

**Clerk of Court: please hold summons pending attempt to secure waiver of service**

27

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

**GREGORY T. BUNCH**

     **Plaintiff,**

    **v.**

**CHEVRON U.S.A. INC.**

     **Defendant.**

**CIVIL NO. PENDING**

## DECLARATION OF GREGORY T. BUNCH

I, Gregory "Greg" T. Bunch, am 38 years old, and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following facts and true and correct to the best of my knowledge and recollection:

1. I am the named plaintiff in the lawsuit *Gregory T. Bunch v. Chevron U.S.A. Inc.*, soon to be filed in the United States District Court for the Eastern District of Louisiana.

2. After reviewing the entire document, I authorized and instructed my attorney, Kevin S. Vogeltanz, to file the original Complaint in this matter and to assert all of the causes of action included therein.

3. I verify that, at the time of its filing, each of the factual allegations of the Complaint was true and correct to the best of my knowledge and recollection.

Executed by me on   5/11/2023  

DocuSigned by:

597C7AC18BD4450...

Gregory "Greg" T. Bunch